**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **2:13-CR-311** |
| | § | **(2:14-CV-182)** |
| **ERNESTO ALARCON-ACOSTA,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Ernesto Alarcon-Acosta (Alarcon-Acosta) filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 23. The government filed a combined response and motion to dismiss along with defense counsel's affidavit. D.E. 31, 38. Alarcon-Acosta filed a reply. D.E. 39. For the reasons stated herein, the § 2255 motion is denied and Alarcon-Acosta is denied a certificate of appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. BACKGROUND

Alarcon-Acosta pled guilty to Illegal Reentry in violation of 8 U.S.C. §§ 1326(a) and 1326(b). At rearraignment before the magistrate judge, Alarcon-Acosta was advised of the maximum punishment:

> THE COURT: Now, the maximum possible punishment in
> each of your cases is going to depend upon your individual
> criminal histories. But the very maximum sentence that any one
> of you faces under any circumstances is up to twenty years in
> the penitentiary. You also could be fined up to $250,000. If
> you are sent to prison, upon your release from prison, you
> could be facing up to three years of supervised release. . . . .
> Also, this is a felony offense, and if you are

1

> convicted, you will have to pay a mandatory $100 special
> assessment. And I want to emphasize, there is no parole in our
> federal system.
> Do you understand the maximum punishment you are
> facing if you are convicted? Mr. Alarcon?
> THE DEFENDANT: Yes . . . .
> Each of you is pleading guilty to a crime
> that subjects you to being deported from the United States. Do
> you understand and have you discussed this with your lawyer?
> * * * * *
> THE COURT: Mr. Alarcon-Acosta?
> THE DEFENDANT: Yes.

D.E. 36, pp. 12-13. The Magistrate Judge advised Alarcon-Acosta of the method by which his sentence would be calculated under the sentencing guidelines that are advisory to the district court. Alarcon-Acosta testified that he and counsel had discussed the sentencing guidelines and how they might apply in his case. *Id.*, p. 15. Alarcon-Acosta further testified that he had not been threatened or promised leniency for his guilty plea. *Id.*, pp. 15-16. He testified he was pleading guilty voluntarily. *Id.*, p. 16. Alarcon-Acosta pled guilty and agreed with the facts recited by the government. *Id.*, pp. 18-20. The Court adopted the Findings and Recommendation on Plea of Guilty by the Magistrate Judge.

The Probation Department prepared a Presentence Investigation Report (PSR). The base offense level for illegal reentry is 8. U.S.S.G. § 2L1.2(a). Alarcon-Acosta was previously convicted of illegal entry, which increased his offense level by 4 points pursuant to U.S.S.G. § 2L1.2(b)(1)(D). After credit for acceptance of responsibility, his total offense level was 10. Alarcon-Acosta had multiple prior convictions including: three misdemeanor DWIs; illegal entry in 2001, 2004, 2005, 2007 and 2010; misdemeanor unlawful carrying of a weapon; misdemeanor failure to identify a fugitive; and misdemeanor fictitious counterfeit inspection or insurance documents. His total criminal history points were 13, including two points because he was on supervised release at the

time of his current offense. Alarcon-Acosta's criminal history category is VI. His guideline sentencing range was 24-30 months, with a maximum statutory sentence of 20 years.

At sentencing, Alarcon-Acosta acknowledged that he reviewed the PSR with counsel and there were no objections. The Court sentenced Alarcon-Acosta to 24 months imprisonment and no supervised release. The Court then revoked Alarcon-Acosta's supervised release in Cause No. 7:10-CR-841 and sentenced him to a consecutive eight-month sentence, with no further supervision. The Court informed him of his right to appeal.

Alarcon-Acosta did not appeal. He filed his motion to vacate, set-aside or correct sentence pursuant to 28 U.S.C. § 2255, which was received by the Clerk on May 22, 2014. It is timely.

### III. MOVANT'S ALLEGATIONS

Alarcon-Acosta raises two grounds of ineffective assistance of counsel: 1) counsel advised him that if he pled guilty, his revocation and current sentence would run concurrently, thereby making his guilty plea involuntary, 2) counsel failed to argue at sentencing that the BOP classification scheme that applied to a deportable alien prevented him from participating in programs that could lead to early release, and 3) counsel did not consult with him about an appeal.

### IV. ANALYSIS

**A.  28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for

transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

**B.        Standard for Claims of Ineffective Assistance of Counsel**

Generally, an ineffective assistance of counsel claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**C.        Involuntary Plea**

Alarcon-Acosta claims that counsel told him that his sentence in this case would run concurrently with his sentence for the revocation of his supervised release. Counsel denies that he did so.

Alarcon-Acosta's claim that counsel promised him concurrent sentences is contradicted by his testimony at rearraignment. The Court advised Alarcon-Acosta of the maximum statutory sentence of 20 years, and Alarcon-Acosta testified he was not promised leniency or a specific sentence.[1] He testified that his counsel explained to him the sentencing guidelines and how they might apply in his case.

Although a guilty plea may be invalid if induced by defense counsel's unkept promises, a defendant will not ordinarily be heard to refute his sworn testimony at the plea hearing. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). A defendant may seek habeas relief on the basis of alleged promises, even if inconsistent with his testimony at the plea hearing, if he proves: 1) the exact terms of the alleged promise; 2) exactly when, where, and by whom the promise was made; and 3) the identity of an eyewitness to the alleged promise. *Id*. at 1110. Only when the defendant provides independent indicia of the likely merit of his allegations, typically in the form of one or more affidavits from reliable third parties, is he entitled to an evidentiary hearing on the issue. *Id*.; *Harmason v. Smith*, 888 F.2d 1527, 1530 (5th Cir. 1989).

---

[1] THE COURT: Has anyone threatened you or forced you to plead guilty or promised you leniency if you would plead guilty?
\* \* \* \* \*
THE COURT: Mr. Alarcon?
THE DEFENDANT: No. . . . .
\* \* \* \*
THE COURT: Has anyone promised you what sentence the District Judge would impose in your case?
\* \* \* \* \*
THE COURT: Mr. Alarcon-Acosta?
THE DEFENDANT: No.

Alarcon-Acosta's claim that counsel promised concurrent sentences must be considered in the context of *Cervantes* and *Harmason*. Although Alarcon-Acosta swears that counsel made the representation to him, he does not state where or when counsel did so, nor does he indicate whether there was a witness to the alleged promise. Alarcon-Acosta's claim that counsel promised him concurrent sentences and that he relied on that promise to plead guilty contradicts his sworn testimony that he was not promised a specific sentence, not promised leniency, understood the maximum punishment, and was aware of the sentencing guidelines and how they might be applied to him.

Alarcon-Acosta's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

Alarcon-Acosta has not established ineffective assistance of counsel before his guilty plea. The Court finds Alarcon-Acosta's plea of guilty was voluntary.

**D.     Claims of Ineffective Assistance of Counsel at Sentencing**

Alarcon-Acosta's second claim is that counsel was ineffective for failing to request that the Court downwardly depart because Alarcon-Acosta's status as a deportable alien results in his ineligibility for lower security confinement by the Bureau of Prisons and ineligibility for early release. This ground is also without merit.

Even if counsel requested that the Court consider these factors, counsel would not have been successful. The sentencing guidelines provide that a downward departure on the basis that the defendant is a deportable alien, while permissible, is proper only in the extraordinary case, and such

6

cases are considered "highly infrequent." *See United States v. Garay*, 235 F.3d 230, 232-33 & n.8 (5th Cir. 2000); *see also United States v. Nnanna*, 7 F.3d 420, 422 (5th Cir. 1993) (a bank robbery case in which the court held that "[c]ollateral consequences, such as the likelihood of deportation or ineligibility for more lenient conditions of imprisonment, that an alien may incur following a federal conviction are not a basis for downward departure").

Moreover, in an immigration offense, a defendant's alienage has been adequately taken into consideration and thus is not a permissible basis for downward departure. *Garay*, 235 F.3d at 233-34 (Defendant's "status as deportable alien, as an inherent element of his crime, has already been considered by the [Sentencing] Commission in formulating the applicable guidelines."); *United States v. Foote*, 2001 WL 671465, *3-*4 (N.D. Tex. 2001) (rejecting argument by § 2255 movant that his counsel should have moved for downward departure); *cf. United States v. Maldonado*, 242 F.3d 1, 4-5 (1st Cir. 2001) ("a deportable alien who commits a crime is still within the 'heartland' of the guidelines;" "the common facts of a long sentence and likely deportation" do not by themselves make a case extraordinary such as to warrant a downward departure); *United States v. Jasso*, 460 Fed. App'x 432, *2 (5th Cir. Feb. 15, 2012) (per curiam) (designated unpublished) ("A defendant's status as a deportable alien cannot serve as a ground for a downward departure if the defendant is sentenced for an immigration offense of which his alien status is an element, as is the case here.").

The Court was aware of Alarcon-Acosta's alien and deportation status, as well as what that meant in terms of the BOP's policies and restrictions. The Court was also aware that those factors were already taken into account by the advisory sentencing guidelines for his offense. Thus, the Court would not have further reduced his sentence had counsel raised an objection on this ground

at sentencing. Because Alarcon-Acosta cannot show that counsel's failure to make the argument would have made any difference in his sentence, he was not prejudiced by counsel's failure. Accordingly, his second ineffective assistance of counsel claim also fails.

### E.     Counsel's Alleged Failure to Consult with Alarcon-Acosta Regarding Appeal

Alarcon-Acosta finally complains that appointed Federal Public Defender (FPD) counsel failed to consult with him regarding an appeal of his sentence. The Court admonished Alarcon-Acosta that he had the right to appeal in both this case and on the revocation of his supervised release.[2]

When a defendant has not instructed counsel whether to file a notice of appeal, the inquiry becomes whether counsel's failure to consult with a defendant regarding an appeal constituted deficient performance. "Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?" *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).[3] The *Roe* court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example,

---

[2]    9 . . . I advise you you have
       10 the right to appeal this sentence. If you're unable to hire a
       11 lawyer, the Court will appoint one for you. Do you understand
       12 that you have that right?
       13 THE DEFENDANT: Yes. . . .

D.E. 34, pp. 4, 6.

[3]    In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id*.

because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. A defendant complaining that counsel failed to file an appeal "must show that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*.

Defense counsel's affidavit states that he and Alarcon-Acosta talked about an appeal on or about August 19, 2013, and Alarcon-Acosta signed a form that stated he wanted to appeal. Counsel's affidavit also states that Alarcon-Acosta telephoned him on August 26, 2013, and left a message that he *did not* wish to appeal. Counsel returned the call the next day, discussed the matter with Alarcon-Acosta and was instructed by Alarcon-Acosta that he *did not* wish to appeal. Alarcon-Acosta subsequently signed a form stating that he did not wish to appeal.

The Court is aware of the local FPD's practice of obtaining written instructions from its clients regarding their decision whether to appeal. The Court is further aware that the form is in English on one side and Spanish on the other. The form used by the local FPD provides three options for the defendant: 1) that the defendant wishes to appeal his conviction and sentence, 2) that he wishes to appeal his sentence, or 3) he does not wish to appeal.

Alarcon-Acosta previsouly testified that he reads Spanish. His reply claims that he telephoned counsel on August 26, 2013, to check on the status of his appeal and he signed the documents sent by counsel for the purpose of counsel proceeding with his requested notice of appeal.

Although Alarcon-Acosta claims that counsel failed to consult with him, his original motion provided no details, no indication that he attempted to contact counsel or that he indicated to counsel a desire to appeal. Alarcon-Acosta's Reply contradicts his original claim of no consultation by

9

stating that he telephoned counsel and spoke to him regarding the progress of his appeal. Evidence that Alarcon-Acosta executed a statement that he did not wish to appeal also contradicts his claim that counsel did not consult with him.

The Court finds that the available documentary evidence overcomes Alarcon-Acosta's conclusory and inconsistent claim. Additionally, in this guilty plea case, Alarcon-Acosta has not stated that he desired to appeal and it is not apparent that any non-frivolous grounds for appeal existed.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Alarcon-Acosta has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 RULES.

A Certificate of Appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have

been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Alarcon-Acosta is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Alarcon-Acosta's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 23) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 23rd day of June, 2015.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE